BUCHALTER NEMER
A Professional Corporation
　　MIA S. BLACKLER (SBN: 188112)
333 Market Street, 25th Floor
San Francisco, CA 94105-2126
Telephone: (415) 227-0900
Facsimile: (415) 227-0770
Email: mblackler@buchalter.com

BUCHALTER NEMER
A Professional Corporation
　　JOSHUA MIZRAHI (SBN: 227639)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: (213) 891-0700
Facsimile: (213) 896-0400
Email: jmizrahi@buchalter.com

Attorneys for Defendants and Counter-Claimants
GIUSEPPE PENZATO and KESIA PENZATO

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| JANE DOE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>GIUSEPPE PENZATO, an individual; and KESIA PENZATO, an individual,<br><br>　　　　　Defendants. | Case No. CV 10 5154<br><br>**COUNTERCLAIM OF GIUSEPPE PENZATO AND KESIA PENZATO FOR:**<br><br>**(1) BREACH OF CONTRACT**<br><br>**(2) INVASION OF PRIVACY** |

　　　　Defendants and Counter-claimants Giuseppe Penzato and Kesia Penzato (collectively, the "Penzatos"), by and through their attorneys, allege as follows:

BN 8497295v2

1

**COUNTERCLAIM**

## INTRODUCTION

1. Plaintiff Jane Doe[1] filed a Complaint with this Court on November 12, 2010, alleging that she was the victim of human trafficking and that the Penzatos committed various wage and hour violations relating to her employment.

## JURISDICTION AND VENUE

2. The Court has personal jurisdiction over Jane Doe ("Jane Doe") because, at all times relevant hereto, she has resided in San Francisco, California.

3. The Court has supplemental jurisdiction over the claims herein under the doctrine of pendant jurisdiction and pursuant to 28 U.S.C. section 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. section 1391 because all of the parties reside in this District, and because a substantial part of the acts and omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

5. Jane Doe was a childhood friend of Kesia Penzato in Brazil. At some point prior to coming to the United States, Jane Doe contacted Ms. Penzato through a social networking website and inquired as to whether there was any opportunity for her to work for the Penzatos so that she could come to the United States.

6. The Penzatos agreed to assist Jane Doe in traveling to the United States, and offered Jane Doe employment as a housekeeper, but that she would also be permitted to engage in personal activities at her discretion, such as take classes at City College.

7. The Penzatos purchased a round trip ticket for Jane Doe, which ticket had an open-ended return ticket so long as it was used within one year.

8. Given that the Penzatos are foreign nationals and Mr. Penzato is an employee of the Italian Consulate, in order for the Penzatos to hire Jane Doe, she needed to enter the United States on an A-3 Visa. Before the A-3 Visa could be issued, however, there had to be an

---

[1] Pursuant to Stipulation, the Penzatos have temporarily agreed to this conditional filing naming pending Plaintiff's motion for a protective order to proceed under pseudonym. Jane Doe has agreed pursuant to this Stipulation that the temporary designation of Jane Doe in no way constitutes the Penzatos' consent to this case proceeding.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

1  employment agreement stating the terms of the employment, which agreement was executed by
2  Mr. Penzato and Jane Doe, and is attached to Jane Doe's Complaint in this litigation.
3        9.    Following Jane Doe's arrival to the United States, the employment agreement was
4  amended, and the parties executed the second amended employment agreement on or about
5  October 22, 2009, which agreement superceded the employment agreement that is attached to
6  Jane Doe's Complaint.
7        10.   The form of employment agreement that the parties entered into was provided by
8  the United States Department of State and provided to Mr. Penzato at the Italian Consulate as the
9  form of agreement that was required to be used when a foreign national working in the United
10 States wished to employ another foreign national to provided housekeeping services.  As foreign
11 nationals, the Penzatos relied on the form of employment agreement provided by the Department
12 of State as the proper form of agreement that would be compliant with all applicable laws.
13        9.    Jane Doe was employed by the Penzatos for approximately three months from
14 approximately August 25, 2009 to November 20, 2009, after which time Ms. Doe announced to
15 the Penzatos that she was moving out of their residence and was going to marry her boyfriend and
16 move to the Netherlands.  Jane Doe further advised the Penzatos that she had a plane ticket to the
17 Netherlands.
18        10.   Since Jane Doe resided with the Penzatos during her brief employment, from time
19 to time she would have occasion to overhear the private conversations of the Penzatos.  Jane Doe
20 was bound by the confidentiality provision contained in the governing employment agreement(s)
21 to maintain the strictest of confidentiality concerning consulate matters.
22        11.   Without the Penzatos knowledge, the Penzatos are informed and believe that Jane
23 Doe secretly recorded private conversations between Mr. and Mrs. Penzato that took place in
24 their home, which conversations related to Mr. Penzato's employment with the General Consulate
25 of Italy and other personal matters.  The Penzatos are further informed and believe that Jane Doe
26 disclosed her recordings and/or the content of the Penzatos' private conversations to Mr.
27 Penzato's colleagues at the General Consulate of Italy and to other third parties.  Jane Doe's
28 disclosure of the Penzatos' private and confidential conversations have harmed the Penzatos by

causing them extreme emotional distress and anguish and damaging their good reputation and dignity within the community and the Italian Consulate.

## FIRST CAUSE OF ACTION

### (Breach of Written Contract, as against Jane Doe)

12. The Penzatos re-allege paragraphs 1 through 11, inclusive, and incorporate the same by reference.

13. In order to obtain an A-3 Visa to permit her entry to the United States, Jane Doe executed an employment agreement on or about June 1, 2009, a copy of which agreement is attached to the Complaint.

14. The employment agreement, like the one that superseded it in October 2009, contained a "confidentiality" provision, specifically designated as Paragraph 8, which provision required Jane Doe to maintain the strictest confidentiality on any information pertaining to the official business and security issues of the Penzatos.

15. Without the Penzatos knowledge, the Penzatos are informed and believe that Jane Doe violated the confidentiality provisions of the employment agreement(s) by secretly recording private conversations between Mr. Penzato and Mrs. Penzato that took place in their home, which conversations related to Mr. Penzato's employment with the General Consulate of Italy and other personal matters. The Penzatos are further informed and believe that Jane Doe disclosed her recordings and/or the content of the Penzatos' private conversations to Mr. Penzato's colleagues at the General Consulate of Italy as well as to other third parties.

16. The Penzatos performed all of the promises, conditions and covenants that they agreed to perform pursuant to the terms of the governing employment agreement(s), except for those promises, conditions and covenants excused by the acts and omissions of Jane Doe.

17. As a proximate result of Jane Doe's breaches, the Penzatos have been damaged in an amount according to proof. In addition, Jane Doe's disclosure of the Penzatos' private and confidential conversations have harmed the Penzatos by causing them extreme emotional distress and anguish and damaging their good reputation and dignity within the community and the Italian Consulate.

## SECOND CAUSE OF ACTION

### (Invasion of Privacy, as against Jane Doe)

18. The Penzatos re-allege paragraphs 1 through 17, inclusive, and incorporate the same by reference.

19. The Penzatos had a reasonable expectation of privacy in their own home, including as to their private conversations that took place therein.

20. Without the Penzatos knowledge, the Penzatos are informed and believe that Jane Doe secretly recorded private conversations between Mr. Penzato and Mrs. Penzato that took place in their home, which conversations related to Mr. Penzato's employment with the General Consulate of Italy and other personal matters. The Penzatos are further informed and believe that Jane Doe disclosed her recordings and/or the content of the Penzatos' private conversations to Mr. Penzato's colleagues at the General Consulate of Italy and to other third parties. The Penzatos are informed and believe that Jane Doe's disclosure of the Penzatos' private and confidential conversations have harmed the Penzatos by causing them extreme emotional distress and anguish and damaging their good reputation and dignity within the community and the Italian Consulate.

21. During her employment, as stated herein, Jane Doe invaded the Penzatos' right to privacy by, among other things:

(a) Publicly disclosing to third parties alleged details of a secret conversation relating to Mr. Penzato's official business at the General Consulate of Italy; and

(b) Publicly disclosing to third parties one-sided and false accusations impugning the character of the Penzatos.

22. The Penzatos' discussions were private and the disclosure was objectionable to the Penzatos and to a reasonable person of ordinary sensibilities.

23. The subject matter that the Penzatos are informed and believe was disclosed by Jane Doe was not a legitimate public concern. The third parties' had no legitimate interest in receiving such information. The disclosures were intrusive in great disproportion to their relevance.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

24.     As a result of the improper disclosures by Jane Doe, the Penzatos have suffered loss of reputation and standing in their workplace and social communities, all of which have caused them humiliation, embarrassment, hurt feelings, mental anguish and suffering, all to their general damage in an amount according to proof at trial.

25.     In making the disclosures described hereinabove, the Penzatos are informed and believe that Jane Doe is guilty of fraud, oppression or malice in that she made these disclosures with the intent to vex, injure or annoy the Penzatos or with a willful and conscious disregard of the Penzatos' rights. The Penzatos therefore seek an award of punitive damages in an amount according to proof at trial.

## PRAYER FOR RELIEF

**WHEREFORE, the Penzatos demand judgment against Jane Doe, as follows:**

1. General damages in an amount according to proof;
2. Consequential damages in an amount according to proof;
3. Actual damages in an amount according to proof;
4. Punitive and exemplary damages;
5. For injunctive relief preventing invasion of privacy;
6. Costs of suit; and
7. Such other relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Defendants hereby demand a jury trial on all issues so triable.

DATED: March 29, 2011

**BUCHALTER NEMER**
A Professional Corporation

By: */s/ Mia S. Blackler*
MIA S. BLACKLER
Attorneys for Defendants
GIUSEPPE PENZATO and KESIA PENZATO